### Gratsch v. Gilbert
*[Cite as 4 AOA 59]*

*Case No. CA-11865*
*Montgomery County (2nd)*
*Decided June 12, 1990*

*James T. Borroughs, Assistant Prosecuting Attorney, Child Support Enforcement Division, 14 W. Fourth Street, Dayton, Ohio 45402, for Plaintiff-Appellee.*

*Robert L. Mues, 22 Clay Street, Dayton, Ohio 45402, for Defendant-Appellant.*

WOLFF, P.J.

Roger Gilbert appeals the trial court's determination that his gross income, for child support purposes, in 1988 was $42,977.

On November 30, 1987, Carol Gratsch, mother of eight year-old John Gratsch, instituted a paternity action alleging that Roger Gilbert was her son's natural father. Following a trial on January 31, 1989, the jury found Gilbert to be John's father, and the trial court entered judgment on the jury determination. On September 14, 1989, a hearing on the support order was held.

Roger Gilbert testified as on cross-examination that he lived in a three-bedroom home on six acres of land that were given to him by his parents. He stated that he, his son, his friends the Bennetts, and his ex-wife owned Gilbert's Party Barn which was a catering business that catered pig roasts. He stated that Gilbert's Party Barn was located on his six acres of land and that a small metal building on the property was used as a kitchen area. He stated that he also farmed land owned by another man.

Gilbert stated that his son drove a 1987 Ford truck, that he drove a 1984 928 Porsche, and that these vehicles were leased by the Gilbert's Party Barn business. He stated that he owned a 1985 GMC van, a rusted out 1981 Chevy van, a 1983 Suzuki motorcycle, a 1965 Triump motorcycle, and a 1978 racing (motor) bike. He stated that his real estate had a mortgage of about $75,000, upon which he made an annual payment of about $8-9,000.

Gilbert testified that his 1988 tax return indicated that Gilbert's Party Barn grossed almost $80,000 and that his income in 1988 was $2,227. He stated that he had a loss of $4,000 from farming in 1988. He stated that his 1987 tax return shows that he had taxable income of $13,000 and that his taxable income in 1986 was $14,949. He stated that his business had "gone downhill" since he was unable to work as hard as he had worked in previous years. He testified that in 1986, he contracted myasthenia gravis which is a rare nerve disease similar to muscular dystrophy. He stated that he had double vision and could not drive or lift anymore.

Carol Ann Gratsch testified that she was John Gratsch's mother and that John was born on April 9, 1982. She stated that since May, 1988, she had her own insurance agency called LPG Benefits. She stated that she earned $12,000 in 1988, and received property worth $5,000 from her parents in 1988.

Gratsch testified that Roger Gilbert had not helped support John since his birth. She stated that during the school year, day care costs for John were $60 per week and that during the summer, day care costs are $81 per week. She stated that she paid $46 per month for health insurance for John.

Gratsch stated that she visited Roger Gilbert's home and described it as having three bedrooms, a loft over the living room, a "rec room" in the basement, and an in-ground swimming pool. She stated that Gilbert had a collection of motorcycles. She stated that in July, 1989, she saw Gilbert driving a yellow Porsche in Xenia.

At the close of all of the testimony, the court made no findings from the bench. The court's September 21, 1989, "Judgment Entry and Order" stated, in pertinent part, as follows:

"The court finds Defendant Gilbert' gross income from 1988 to be $42,977. The court attains this finding by following Ohio Superintendence Rule 75, which does not allow a self-employed obligor to place depreciation expenses or other non-cash deductible items as ordinary or necessary expenses against the gross income. The court, following Chapter 3111 of the Ohio Revised Code, sets support at $120.00 per week."

Gilbert's assignment of error states:

"The lower court abused its discretion in failing to follow the Supreme Court Superintendence Rule 75."

Gilbert maintains that the trial court misinterpreted Rule 75(III) (A) (3) of the Rules of Superintendence for Courts of Common Pleas which states:

"(3) Income from self-employment or operation of a business, income from rental property, passive income, or potential cash flow from any source. For income from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, or rents, gross income is defined as gross receipts minus ordinary and necessary expenses incurred in generating such income.

"Specifically excluded from ordinary and necessary expenses for purposes of these Guidelines are amounts for depreciation expenses or other non-cash deductible items allowable by the Internal Revenue Service. In general, income and expenses referenced herein should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. This amount may differ from a determination of business income for tax purposes.

"Expense reimbursements or in-kind payments received by a parent from self-employment, operation of a business or rents should be counted as income if they are significant and

reduce personal living expenses. Such payments might include a company car, free housing, reimbursed meals, or any other benefits."

Gilbert maintains that the court erred in not deducting all ordinary and necessary expenses except depreciation listed in Schedules C and F of his 1988 tax return. He states that had the court deducted all of the ordinary and necessary expenses incurred in generating income, except depreciation, his income from his business and farming operations would have been $9,605. He states that he also had taxable interest of $89 and wages of #323 in 1988, which would have resulted in gross income of $10,017 under C.P. Sup. R. 75(III)(A)(3).

Gilbert's 1988 tax return was introduced as plaintiff's exhibit 1 at the hearing and was admitted into evidence. Appendix C to Gilbert's brief accurately portrays Schedule C and Schedule F of Gilbert's 1988 tax return, after elimination of depreciation deductions, as follows:

### EXPENSE FROM GILBERT'S PARTY BARN

| | |
|---|---|
| Gross Receipts | $ 79,370.00 |
| Cost of Goods Sold | 39,972.00 |
| Advertising | 1,825.00 |
| Car and Truck Expenses | 4,194.00 |
| Insurance | 727.00 |
| Mortgage Interest | 6,089.00 |
| Other Interest | 563.00 |
| Legal and Profesional Services | 235.00 |
| Rent on Business Property | 1,165.00 |
| Repairs | 2,738.00 |
| Taxes | 3,118.00 |
| Travel, Meals Entertainment | 1,282.00 |
| Utilities and Telephone | 3,722.00 |
| Other Expenses | 403.00 |
| Gross Income | $ 13,337.00 |

### EXPENSES FROM FARMING OPERATIONS

| | |
|---|---|
| Gross Income | $ 10,759.00 |
| Feed Purchased | 1,644.00 |
| Fertilizers and Lime | 500.00 |
| Gas, Fuel, Oil | 293.00 |
| Insurance | 123.00 |
| Mortgage Interest | 3,045.00 |
| Other Interest | 282.00 |
| Labor Hired | 67.00 |
| Rent of Farm | 2,712.00 |
| Repairs, Maintenance | 1,708.00 |
| Seeds, Plants Purchased | 1,157.00 |
| Supplies Purchased | 2,538.00 |
| Utilities | 398.00 |
| Veterinary Fees | 24.00 |
| Loss | $ 3,732.00 |

### RULE 75 GROSS INCOME COMPUTATION

| | |
|---|---|
| Gross Receipts, Business | $. 79,370.00 |
| Gross Income, Farming | 10,759.00 |
| Allowable Expenses, Business | 66,033.00 |
| Allowable Expenses, Farming | 14,491.00 |
| Wages | 323.00 |
| Taxable Interest and Dividend Income | .89.00 |
| Rule 75 Gross Income | $ 10,017.00 |

The trial court computed Gilbert's gross income under C.P. Sup. R. 75(III)(A)(3) as $42,977. While the court did not explain how it arrived at $42,977, the following calculation, in our estimation, depicts the particular expenses the court probably deducted in computing Gilbert's gross income for 1988. (Although our calculation of $42,905 is $72 less than the trial court's determination of Gilbert's gross income, this discrepancy is of no consequence to our disposition of the appeal.)

| | |
|---|---|
| $ 79,370 | gross receipts from business |
| +10,759 | gross income from farming |
| 90,129 | |
| -39,972 | cost of goods sold and/or operations |
| 50,157 | [business expense] |
| -1,825 | advertising [business expense] |
| 48,332 | |
| -1,644 | feed purchased [farm expense] |
| 46,688 | |
| - 500 | fertilizer [farm expense] |
| 46,188 | |
| -1,157 | seeds, plants purchased [farm expense] |
| 45,031 | |
| -2,538 | supplies purchased [farm expense] |
| 42,493 | |
| + 323 | wages |
| 42,816 | |
| + 89 | dividend and taxable interest |
| $ 42,905 | income |

Gilbert argues that the court's gross income determination amounts to an abuse of discretion since the court failed to deduct other expenses that he claims should have been deducted under C.P. Sup. R. 75(III)(A)(3).

In *Pruden-Wilgus v. Wilgus* (1988), 46 Ohio App. 3d 13, the defendant-appellant, William W. Wilgus, argued that the trial court abused its discretion in making an unconscionable child support award. The court stated:

"Appellant is self-employed and claims as his annual income his salary from his realty corporation which he states is $5,200. However,

under the Child Support Guidelines, amounts for depreciation and other non-cash deductible items allowable by the Internal Revenue Service are not deducted from the gross revenue of a person who is self-employed, and significant amounts of reimbursements and in-kind payments received by a self-employed parent are to be counted as income. Ohio Child Support Guidelines, C.P. Sup. R. 75(C)(1)(c), now 75(III)(A)(3). See 39 Ohio St. 3d xlv, xlviii.

Therefore, the court's taking into consideration amounts on appellant's tax returns which do not affect cash flow and the fact that appellant receives a residence and use of an automobile from his business as additional compensation was not arbitrary, unreasonable or unconscionable. There was ample evidence to support the award." *Id.* at 15.

The ultimate issue for our consideration is whether the trial court abused its discretion in finding that Gilbert's gross income under C.P. Sup. R. 75(III)(A)(3) in 1988 was $42,977, a figure Gilbert claims is almost $33,000 too high. The court disallowed the following expenses which Gilbert claimed were "ordinary and necessary expenses incurred in generating...income": car and truck expenses, insurance, mortgage and "other" interest, legal and professional fees, rent, repairs, taxes, meals, travel, and entertainment, licenses, gifts, labor, gasoline, fuel, and oil, utilities, and veterinary fees. C.P. Sup. R. 75(III)(A)(3) states, in pertinent part, that:

"Specifically excluded from ordinary and necessary expenses for purposes of these Guidelines are amounts for depreciation expenses or other non-cash deductible items allowable by the Internal Revenue Service. In general, income and expenses referenced herein should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. *This amount may differ from a determination of business income for tax purposes.*

"Expense reimbursements or *in-kind payments* received by a parent from self-employment, operation of a business or rents should be counted as income if they are significant and reduce personal living expenses. *Such payments might include a company car, free housing, reimbursed meals, or any other benefits.*" (Emphasis added.)

We can only assume that the trial court determined that Gilbert derived personal benefit from the above, disallowed items that were expensed on his Schedule C and Schedule F.

From our review of the 1988 tax return and Gilbert's testimony, we are well satisfied that the trial court was justified in disallowing at least a part of some of Gilbert's claimed business expenses, e.g. mortgage interest, vehicle expenses, repairs, taxes, entertainment, utilities. The evidence certainly supports a determination that Gilbert's real estate mortgage interest and taxes were charged to the business although he lived on the real estate, that he drove a company car, and that he charged some of his meals to his expense account.

However, we do not think that the evidence justified the trial court's disallowing all of the claimed business expenses. Accordingly, this matter must be remanded for further proceedings to determine with greater precision what portion of the almost $33,000 disputed business expenses is not legitimately characterized as "ordinary and necessary expenses incurred in generating ...income." If, notwithstanding a determination that certain of Gilbert's claimed business expenses are legitimate, the trial court still determines to establish Gilbert's child support obligation at a level in excess of that suggested by the guidelines, it should provide the parties (and this court) with "a brief statement to substantiate the deviation." (Rule 75(I).

Gilbert also argues that the trial court failed to consider R.C. 3109.05(A) factors in establishing child support. The judgment entry states that "[t]he court, following Chapter 3111 of the Ohio Revised Code, sets support at $120.00 per week." The judgment entry does not mention R.C. 3109.05(A) factors, and properly so as this case was initiated pursuant to R.C. 3111.01 *et seq.* The factors pertaining to the determination of child support under Chapter 3111 are located at R.C. 3111.13(E):

"In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall base the judgment or order of support upon the financial status of the parents and the father's ability to pay support, and shall consider all relevant facts, including, but not limited to, all of the following:

"(1) The needs of the child;

"(2) The standard of living and circumstances of the parents;

"(3) The relative financial means of the parents;

"(4) The earning ability of the parents;

"(5) The need and capacity of the child for education;

"(6) The age of the child;

"(7) The financial resources and the earning ability of the child;

"(8) The responsibility of the parents for the support of others;

"(9) The value of services contributed by the custodial parent."

In this case the parties had an opportunity to present evidence pertinent to these factors at the support hearing. Ms. Gratsch testified that her income in 1988 was $12,000 and that she received property worth $5,000. She said that her daycare costs were $60 during the school year, and $81 in the summer, and that health insurance per month for John cost $46. Gilbert entered his tax returns into evidence, testified as to his income and expenses, and stated that he had a debilitating nerve disease that effected his work.

While the trial court's judgment does not discuss the R.C. 3111.13(E) factors, this court presumes the regularity of the trial court's proceedings, and nothing in the record indicates that the court failed to consider these statutory factors in making its child support determination, although, as discussed above, the evidence did not warrant fixing Gilbert's gross income at $42,977. The weight to be given Gilbert's testimony as to his health and declining earning ability was for the trial court to determine.

Because the present record convinces us the court erred in fixing Gilbert's 1988 gross income at $42,977, the judgment will be reversed and the case remanded for further proceedings. The assignment of error is sustained.

*Judgment reversed and cause remanded.*

WILSON, J., and GRADY, J., concur.